THOMAS, The (TRUMP v.). See Case No. 14,206.

THOMAS (TURNBULL v.). See Case No. 14,243.

THOMAS (UNITED STATES v.). See Cases Nos. 16,472–16,477.

## Case No. 13,913.

### THOMAS v. WATSON.

[Taney, 297.] [1]

Circuit Court, D. Maryland. Aug. 27, 1846.

GAMING—USURY—PENALTIES—PLEADING IN EQUITY—ANSWER—RES JUDICATA—INSOLVENCY — SUIT BY TRUSTEE.

1. L. confessed judgment on two promissory notes, one of which was given upon a usurious and the other upon a gambling consideration, and afterwards became insolvent, and a trustee of his estate was appointed under the insolvent laws of Maryland. The trustee-filed a bill for relief from an execution issued upon the judgment, and called on the judgment-creditor to state the true consideration of said notes.

2. On demurrer to the prayer for such discovery, held, that as the defendant had not objected to answering, on the ground that his answer might subject him to a penalty or forfeiture, and had not averred in his answer that the discovery sought for would bring him into any such danger, he could not avail himself of this defence on the argument.

3. Even if this defence had been made in the answer, it could not be sustained: (1) Because, as to the usury, the mere making of a usurious agreement, or taking a bond or other obligation to secure it, does not subject the lender to a penalty or forfeiture; (2) because, as to the gaming, he was not asked to state the circumstances under which the money was won; he was required simply to state whether the consideration was a gaming debt or not, and there are many ways in which he might have won the money without subjecting himself to a penalty.

4. Although an affirmative answer would undoubtedly prevent the party from recovering the money, yet that is not a penalty or forfeiture, within the meaning of the law, to excuse him from answering. If the money had been paid by L. upon these two notes, the complainant might, upon a bill filed, have recovered it back.

5. The principle upon which the court grants relief after a voluntary payment of money, must also entitle the party to relief after a voluntary confession of judgment.

6. The omission of L. to defend himself in the action at law, is no bar to the relief asked for

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

by the complainant; these questions not having been raised in that suit, nor yet been decided in any court.

7. The rights and defences possessed by L. at the time of his release, are transferred to his trustee; and the complainant may now make the same defences, at law or in equity, against these claims, and against the judgment upon them, which L. could have made, if he had never become insolvent.

8. Although the Maryland act of 1845 (chapter 352) abrogates the penalties inflicted by the act of 1704 (chapter 69), in cases of usury, and permits the party to recover the sum actually loaned, with legal interest thereon, yet the contract, so far as the usurious interest is concerned, is still made void, and the policy of the former law upon the subject, in that respect, remains unaltered.

The bill in this case was filed on the 18th day of December, 1845, by [Philip F. Thomas] the permanent trustee of J. M. Lloyd. Its object was to obtain relief, by injunction, against a judgment for $6,571.95, recovered in this court on the 18th day of April, 1844, against the said Lloyd, by Henry H. Watson, a resident of the city of New York. It stated that at the time of the confession of said judgment, Watson held two promissory notes of Lloyd, one of which amounted, principal and interest, at the date of the judgment, to about $4,328, and was given in consideration of a loan of money usuriously made by said Watson to said Lloyd; and the other of said notes was given for money lost at play, and for no other than a gambling consideration. That on the day of the rendition of the judgment, or immediately before, an agreement was entered into by the said Lloyd, with the counsel of Watson, to confess judgment for the sum of four thousand dollars and costs; that, at the time of the agreement, the promissory notes were not shown to Lloyd, nor was any calculation made of the amount due on them. the said Lloyd's agreement being to confess judgment for $4,000, and no more; and that he left town with the belief that judgment was so confessed, and remained under that impression till recently; that independently of said agreement, an error was made, as the defendant admits, in the rendition of the judgment, which is for $485.59 more than purports to be due on said notes. That said Watson had caused execution to be issued for the whole amount of the judgment, and had levied upon the lands held by said Lloyd at the date of the judgment, and had advertised the same for sale. That although Lloyd himself did not avail himself of the defences which he might have made to the suit on said notes, yet the complainant, as his trustee in insolvency, and in respect of the rights of his creditors, was entitled to be relieved from the effect of said judgment, to the extent of its excess over and above the money actually loaned by said Watson to said Lloyd, and the legal interest thereon, which he, the complainant, was willing and tendered to pay to said Watson. That the complainant claimed the benefit of

said defences to said judgment, which he asked to have reformed and corrected, and further prayed that the defendant in his answer might say—(1) Whether on the 18th of April, 1844, he was not the holder of two promissory notes given to him by James Murray Lloyd, and if he was, what was the amount due thereon, on said day, and that he might produce the same. (2) Whether said notes were not then in the possession of his counsel, in the city of Baltimore, and did not constitute the claim upon which the judgment in the circuit court of the United States for the district of Maryland, thereinbefore referred to, was rendered? (3) Whether said judgment was not rendered in pursuance of a supposed agreement with James Murray Lloyd, the defendant therein, and whether the same was not erroneously so rendered? (4) Whether the agreement in this bill alleged to have been entered into by said Lloyd, was not, in fact, the agreement he did make? (5) What was the consideration for which said notes were given by the said Lloyd to him, the said Watson, and what the consideration of each of them?

A short copy of the judgment was exhibited with the bill. The injunction prayed for was granted on the 20th of December, 1845. On the 10th of January, 1846, the defendant, Watson, filed his answer, in which he admitted the application of Lloyd for the benefit of the insolvent laws, the appointment of the complainant as his permanent trustee, the due execution of his bond, and the rendition of the judgment, as stated in the bill; but denied that any mistake was committed in the rendition of said judgment, except the one of $485.59, mentioned in the bill, which the defendant's counsel agreed to correct, immediately upon its discovery. He stated that, at the time of the confession of said judgment, he did hold two promissory notes of said Lloyd, which were placed in his counsel's hands for collection,. and were deposited in this court at the time of the rendition of the judgment on them; but he denied that any such agreement as was set forth in the bill, in regard to said confession of judgment, was ever entered into, but he was informed by his counsel, and believed, that the only agreement made in reference to said confession of judgment was an agreement to confess judgment for the whole amount of the claim represented by said notes. To the first interrogatory he answered, that he was, at the time therein mentioned, the holder of two promissory notes of the said Lloyd, which were filed as aforesaid, and the amount due thereon was the sum stated in the judgment, less the amount aforesaid erroneously calculated as interest. To the second interrogatory he answered, that said notes did constitute the claim upon which said judgment was rendered. To the third interrogatory he answered, that said judgment was rendered upon the agreement stated in his answer, and upon no other agreement, and that

there was no error in the rendition thereof, except the one stated in his answer. To the fourth interrogatory he answered, that there never was any such agreement as stated in this interrogatory. And the defendant, by protestation, not confessing or acknowledging all or any of the matters and things in the said bill contained, touching the consideration of the said notes, as being tainted either with usury or gaming, demurred thereto, for the following cause, to wit, that the said matters were triable and determinable, and available to the said Lloyd, at law, and ought not to be inquired of by this court. Wherefore, and for divers other errors and imperfections, the defendant prayed the judgment of this court, whether he should be compelled to make any further or other answer to said bill, or any of the matters and things therein contained.

To this answer the complainant excepted, the grounds assigned being—(1) That said defendant, in his answer, did not admit or deny the allegation, in the bill of the complaint contained, that the consideration of the note first therein mentioned, being the promissory note of the said James Murray Lloyd, for $4,000, was founded on an usurious consideration, but on the contrary thereof, had wholly omitted to answer the same. (2) That said defendant, in his said answer, did not admit or deny that the other promissory note referred to in the complainant's bill, being the promissory note of the said James Murray Lloyd, for $2,500, was founded on a gambling consideration, but on the contrary thereof, had wholly omitted to answer the same. (3) That the demurrer in said answer contained was insufficient, because—First. It contained no certificate of counsel that, in his opinion, it was well founded in point of law. Second. It was not supported by the affidavit of the defendant that it was not interposed for delay. Third. The same was unfounded in law. The defendant afterwards supplied the affidavit to the demurrer.

John Nelson and J. M. Buchanan. for complainant.

Reverdy Johnson, for defendant.

Before TANEY, Circuit Justice, and HEATH, District Judge.

TANEY, Circuit Justice. The court has taken time to examine this case with care, because the points raised in it are important, and some of them do not appear to have been fully settled by judicial decisions.

The case, as it comes before the court, is this: James Murray Lloyd, named in the proceedings, gave two promissory notes to Watson, the defendant, upon which a suit was afterwards instituted in this court, and judgment confessed by Lloyd, on the 18th of April, 1844, with an agreement entered on the record that no execution should issue on the judgment, provided the amount was paid

by the defendant in four equal annual instalments, counting from the day of entering the judgment, and in case of default in any instalment, execution to go for the whole sum then due. On the 15th of August 1845, Lloyd petitioned for the benefit of the insolvent laws of Maryland, and the complainant in this case was duly appointed his permanent trustee for the benefit of his creditors. Default having been made by Lloyd in the payment of the instalments hereinbefore mentioned, Watson issued an execution for the amount due on the judgment, which was levied upon lands held by Lloyd at the date of the said judgment; and thereupon, on the 18th of December 1845, the complainant, as trustee, filed this bill, and obtained from the district judge the injunction now in question.

Since the injunction issued, the answer of defendant has come in, and upon the facts stated in the answer, it is unnecessary to examine any of the allegations in the bill, upon which the injunction was granted, except those which relate to the consideration of the two notes given by Lloyd to Watson, and upon which the judgment in question was confessed.

The bill charges that one of the notes was given upon an usurious, and the other upon a gambling, consideration; offers to pay the amount actually loaned by the defendant to Lloyd, with legal interest thereon; prays to be relieved from the residue of the judgment; and calls on the respondent to state what was the consideration for which the said notes were given. To this interrogatory the defendant has demurred, setting forth as his cause of demurrer, that the consideration of the said notes was triable and determinable in the suit at law, and ought not, therefore, to be inquired into by this court, sitting as a court of chancery. The complainant excepts to this answer as insufficient, insisting that the defendant is bound to answer the interrogatory above mentioned; and the case now comes on, upon the hearing of the exceptions, and upon the motion to continue the injunction.

Several points have been raised in the argument, which will be noticed hereafter, but the main question in the case is, upon the effect of the judgment confessed in the action at law. The complainant, as trustee under the insolvent law, stands in the place of Lloyd; and undoubtedly the latter might, in the suit against him, have availed himself of the defences stated in the bill, and might have barred the action of Watson by pleading the matters now insisted on. As he failed to do so, he would not, in ordinary cases, be permitted to insist on them in a court of equity, after having neglected to rely on them in the suit at law. But it does not follow that the same rule is to be applied where contracts are made, or securities taken, in violation of law, or contrary to declared and established policy; and of this description are all securities, by note or otherwise, intended to secure usurious interest, or for money won at play.

In such cases the court are called upon to consider, not only the laches of the party who may have been grossly negligent in asserting his rights, but must look also to the conduct of the adverse party, and determine whether it is consistent with sound principles of jurisprudence, to protect him in the enjoyment of profits derived from securities taken in violation of the express provisions of a statute, and which the law declares shall be void. Undoubtedly, it is within the legitimate province of courts of justice, and it is their duty in the exercise of the powers confided to them, to carry into full effect the policy of the law, when that policy is sufficiently and clearly manifested. Nor can they suffer it to be defeated or embarrassed, by the application of rules which do not belong to cases of that description, but are appropriate to another class of cases, and which have been adopted in them, for the purpose of preventing unnecessary litigation, where nothing more is concerned in the issue than the individual rights of the contending parties.

The distinction between these two classes of cases, and the different rules which govern them, have been frequently recognised, where a party, by his voluntary act, has put it out of his power to use a legal defence which would have protected him from the payment of the claim. Thus, in ordinary cases of contract, if a party pays money with a full knowledge of the facts, but under the mistaken belief that he is bound by law to pay it, and afterwards discovers his error, he cannot recover it back again by any proceeding at law or in equity. Yet, in a case of usury or gaming, although he pays it not only with a knowledge of the facts, but with a knowledge of the law also, equity will relieve him and compel the adverse party to refund the money. As respects usurious interest paid to the lender, the amount paid over and above the legal interest may be recovered back again either by a suit at law or a bill in equity. 1 Fonbl. Eq. bk. 1, c. 4, § 7, note k. As regards a security for money lost by gaming, it was, indeed, said by Lord Talbot, that it could not be recovered, both parties being equally in fault; but that point did not arise in the case before him; it was an obiter dictum, when deciding upon a question of usury; and the point was decided otherwise in the case of Rawden v. Shadwell, Amb. 269. In the last-mentioned case, a bond had been given for money lost at play, and part of the money paid upon the bond; yet the court, upon a bill filed for that purpose, decreed that the bond should be delivered up to be canceled, and the money repaid. Indeed, there can be no sound reason for distinguishing securities for money won at play from securities founded in usury, so as to give any advantages to the former over the latter; for they are both

prohibited by law, both contrary to its settled policy; and while the laws against usury are intended to protect the necessitous against the oppression of the money-lender, and against hard and ruinous contracts forced upon them by their wants, the laws against gaming are founded upon a policy equally sound and clear, and are intended to discountenance and discourage a vice injurious to society, and often most ruinous to the individual.

If, therefore, the money had been paid by Lloyd upon these two notes, it is evident, that the complainant might, upon a bill filed, have recovered it back. And if a court of chancery would have interfered, after the money had been actually paid, is there any principle of equity which will prevent it from interposing, where the party has omitted to defend himself at law, and confessed a judgment?

There is nothing, certainly, in the technical character of a judgment that will prevent the interposition of a court of equity, for it is one of its ordinary functions to relieve against judgments at law, where a proper case is made out in equity. And if it will lend its aid to the party, after he has acknowledged the justice of the debt by the payment of the money, there can be no sufficient reason for refusing to interpose where the party has omitted to make the defence in an action at law, and acknowledged the debt by confessing the judgment. In either case, the court acts to prevent the party from retaining an advantage which he has obtained, under a contract forbidden by law, and to uphold an established public policy, intended, in the one case, to guard against oppression, and in the other, to suppress a vice injurious to society. If the mere confession of a judgment at law would secure a party in his ill-gotten gains, the statutes passed upon these subjects would be nugatory, since they could be constantly and easily evaded by substituting a confession of judgment in the place of a note or bond, or other security. When the public policy established by the legislature is so obvious, and is so clearly founded in the principles of justice, and required by the interests of society, it would ill become a court of equity, by narrow and technical constructions, to deprive itself of the power of enforcing it.

These principles are supported by high judicial authority. So far as the question of usury is concerned, the precise point before us appears to have been decided in the court of appeals of Maryland, upon full argument, in the case of West v. Beanes, 3 Har. & J. 568, and also in Fanning v. Dunham, 5 Johns. Ch. 142. It is true that, in the last-mentioned case, a warrant of attorney to confess the judgment was executed at the same time with the bond, and might perhaps be regarded as one of the securities taken by the lender; but the case evidently was not decided merely on that ground, but was likened by the court to the case of a borrower who had

voluntarily paid the money, and thereby put it out of his power to resist, as defendant, the claim of the creditor.

As regards the money won at play, it is truly said, in 1 Story, Eq. Jur. §§ 303, 304, that there is no difference, in principle, between usurious and gaming contracts, in this respect, as the securities in both cases are void at law, and the contracts in each case against its policy.

We concur in these doctrines, and think the omission of Lloyd to defend himself in the action at law is no bar to the relief asked for by the complainant. If the question of usury or not, or of gaming or not, had been made in the suit at law, and decided against Lloyd, undoubtedly, the complainant could not be permitted to try the same questions over again in equity, and consequently, would not be entitled to the discovery he asks for; but these questions were not raised in that suit, and have not yet been decided in any court. The question before us is, whether it is too late now to raise them, and whether the judgment confessed shuts the door against further inquiry into the consideration of the notes upon which it is admitted to have been entered. We think it does not; and that the principle upon which the court grants relief after the voluntary payment of the money, must also entitle the party to relief after a voluntary confession of judgment. In each case, the party, by his voluntary act, has deprived himself of the opportunity of defending himself in a court of law.

The act of the general assembly of Maryland, passed at December session 1845, after these contracts were made, and indeed, after the bill in this case was filed, cannot, of course, have any influence on this decision. And if it could, it would not materially affect the principles hereinbefore stated; for although this law abrogates the penalties inflicted by the act of 1704, in cases of usury, and permits the party to recover the sum actually loaned, with legal interest thereon, yet the contract, so far as the usurious interest is concerned, is still made void, and the policy of the former law upon the subject, in that respect, remains unaltered.

It has, moreover, been insisted, in the argument for the defendant, that the complainant is not entitled to the discovery, because the answer may subject the defendant to a penalty or forfeiture. Upon this point it is sufficient to say, that the defendant has not objected to answering on this ground, and does not aver, in his answer, that the discovery sought, would bring him into any such danger; it cannot, therefore, we think, be relied on in the argument. But if this defence had been made in the answer, it could hardly have been sustained; for, as relates to the usury, it is admitted by the bill, that no money was received by the defendant; and the mere making of an usurious agreement, or taking a bond or other obligation to secure it, does not subject the lender to a penalty or

forfeiture. Nor do we perceive how he will be brought into any such danger, by answering that part of the interrogatory which concerns the note alleged to have been given for a gaming debt. If he admits that the note was given for money won at play, it is difficult to imagine how that fact could be used to prove that he kept a faro-bank, or practised any other of those devices upon which the law inflicts a punishment; nor can we imagine how this fact could become a material link in any chain of evidence in a prosecution against him. He is not asked to state the circumstances under which the money was won; he is required simply to say whether the consideration was a gaming debt or not; and there are a multitude of ways in which he may have won the money without subjecting himself to a penalty.

In a defence of this kind, the bare statement of the defendant would hardly be sufficient, even if made in his answer; the court must be satisfied that he has some reasonable and probable grounds to apprehend danger from his answer, in case a prosecution should afterwards be instituted against him. The right to a discovery, so far as it can be maintained on principles of equity, would seem to be peculiarly necessary and appropriate in cases of this kind, where the winner most commonly takes the security in private; where no witnesses are present who know anything of the transaction; and does this, in order to deprive the loser of proof, if he should afterwards endeavor to resist the payment.

No doubt an affirmative answer in this case will prevent the party from recovering the money; but that is not a penalty or forfeiture within the meaning of the law. The object of every bill of discovery is to obtain from the defendant the admission of some fact, which the complainant supposes will enable him to prevent the recovery of some claim which the defendant has made against him, or enable him to enforce a claim against the defendant, which he has not otherwise sufficient testimony to establish.

It has been further argued that, as Lloyd himself has not made this defence, nor united in this proceeding, his trustee under the insolvent law has no right to bring these claims into question. But we regard it as settled law, that the permanent trustee, appointed upon the release of the insolvent, becomes immediately vested with all the rights, at law or in equity, which the latter then possessed, and may enforce any right, or make any defence, which the insolvent could have maintained or enforced at the time of his insolvency. These rights are transferred to the trustee, and the complainant may now make the same defences, at law or in equity, against these claims and against the judgment upon them, which Lloyd could have made if he had never become insolvent.

The first and second exceptions filed by the complainant must therefore be allowed, and the answer of the defendant in those respects adjudged insufficient; and the injunction heretofore granted be continued until the further order of this court. The third exception of the complainant is overruled.